1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JENNIFER WILLIAMS, and DAVID STRAUSS on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT
Case No.: _____

011357-11/3434477 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     JURISDICTION AND VENUE ...........................................................................3

III.    PARTIES ..............................................................................................................4

     A.     Plaintiffs ...................................................................................................4

          1.     Washington Plaintiff: Jennifer Williams .....................................4

          2.     New York Plaintiff: David Strauss ...............................................6

     B.     Defendant ..................................................................................................9

IV.     FACTUAL ALLEGATIONS ................................................................................9

     A.     A company's commitment to ethical supply chains is a material
         attribute to consumers. ..............................................................................9

     B.     Starbucks touts its ethical supply chains via uniform consumer-
         facing representations prominently displayed at point-of-sale. ..............11

     C.     Starbucks knows that claims relating to ethical supply chains are
         material to consumers. .............................................................................14

     D.     Starbucks' Deceptive Claims are misleading due to Starbucks'
         inaction to systematic human rights and labor law violations in its
         supply chain. ............................................................................................17

     E.     Starbucks also conceals material information regarding the
         existence of industrial solvents and VOCs in Starbucks Decaf
         Coffee Products........................................................................................23

     F.     Plaintiffs and consumers have been injured by Starbucks'
         Deceptive Claims. ....................................................................................28

V.      TOLLING ALLEGATIONS ...............................................................................29

     A.     Discovery Rule Tolling............................................................................29

     B.     Fraudulent Concealment Tolling .............................................................30

     C.     Estoppel....................................................................................................30

VI.     CLASS ALLEGATIONS ....................................................................................31

VII.    CLAIMS FOR RELIEF ......................................................................................34

CLASS ACTION COMPLAINT - i
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

COUNT I VIOLATION OF WASHINGTON'S CONSUMER PROTECTION
ACT, WASH. REV. CODE §§ 19.86, *ET. SEQ*;..............................................34

COUNT II FRAUDULENT CONCEALMENT UNDER WASHINGTON LAW .....................35

COUNT III VIOLATION OF NEW YORK GENERAL BUSINESS LAW
SECTION 349.................................................................................37

COUNT IV VIOLATION OF NEW YORK GENERAL BUSINESS LAW
SECTION 350.................................................................................39

COUNT V FRAUDULENT CONCEALMENT UNDER NEW YORK LAW...........................40

PRAYER FOR RELIEF .............................................................................42

DEMAND FOR JURY TRIAL .....................................................................42

CLASS ACTION COMPLAINT - ii
Case No.: _____



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

Plaintiffs Strauss and Williams allege the following based on personal knowledge and investigation by their counsel, as to themselves, and as to all other matters, upon information and belief:

## I.    INTRODUCTION

1.    Starbucks has built substantial consumer trust by presenting itself as an ethical leader in the coffee industry. This case seeks to hold Starbucks accountable for telling consumers it guarantees the ethical nature of coffee supply chain, when the facts on the ground show otherwise. This case also seeks to have Starbucks disclose to consumers the existence of volatile organic compounds ("VOCs") such as benzene, toluene and methylene chloride in Starbucks' decaffeinated coffee beans.

2.    For years, Starbucks has printed the statement "Committed to 100% Ethical Coffee Sourcing" on the front-of-pack label[1] on all its Starbucks Coffee Products.[2] Starbucks does this to suggest to consumers that Starbucks coffee beans sold under the Starbucks brand come from ethically reputable sources and are not produced via the reliance of serious labor-rights abuses:

  

---

[1] Starting around 2022, Starbucks redesigned its coffee labels. Starbucks maintained the "Committed 100% Ethical Coffee Sourcing" statement on the front label but also added the C.A.F.E. logo. The image on the left is the previous version and the image from the right is from the current version.

[2] The term "Starbucks Coffee Products" includes all coffee bean products manufactured by Starbucks that includes the phrase "Committed to 100% Ethical Coffee Sourcing," including by not limited to coffee beans sold directly by Starbucks and/or via third party retailers. This term also includes both caffeinated and decaffeinated coffee beans sold in whole bean, ground, or via Keurig K-Cup formats. The term "Starbucks Decaf Coffee Products" is a subset of Starbucks Coffee Products made with decaffeinated coffee beans.

CLASS ACTION COMPLAINT - 1
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

011357-11/3434477 V1

3.      Starbucks relies on a series of deceptive claims to create a net impression of the current status of its ethical coffee sourcing leadership. First, as noted above, Starbucks prints the term "Committed to 100% Ethical Coffee Sourcing" in a highly prominent location on all of its Starbucks Coffee Products where it is most likely to be seen by consumers. Second, Starbucks persistently invokes its C.A.F.E. Practices program as the "cornerstone of our ethical sourcing approach to buying coffee" —and even displays the C.A.F.E. logo at the point of sale—to imply to consumers that its supply chains are backed by an effective, functioning system of ethical oversight.  More specifically, Starbucks' Coffee and Farmer Equity ("C.A.F.E.") Practices program is a proprietary ethical-sourcing system, to assess, approve, and certify coffee farms and suppliers. Starbucks represents that C.A.F.E. Practices establishes rigorous labor and human-rights standards, includes verification and auditing, and enforces "zero-tolerance" criteria for abuses such as forced labor and child labor. Third, Starbucks refers to its partnership with the non-profit environmental organization Conservation International to amplify the credibility of Starbucks' ethical sourcing and verification claims. Finally, Starbucks includes the use of the term "100%" to reasonably convey that Starbucks promptly and meaningfully investigates and remediates any ethical violations in its supply chain. Reasonable consumers rely on these representations and their net impression in deciding whether to purchase Starbucks coffee or what to pay for it ("Deceptive Claims")

4.      But this net impression created by Starbucks is  misleading as Starbucks has, over the past ten years, been directly confronted by government authorities, United Nations agencies, investigative journalists, and worker advocates with documented accounts of forced labor, child labor, unsafe working conditions, wage theft, and other serious labor law violations on C.A.F.E. certified farms. These violations have not been isolated or aberrational. They have recurred across countries, across years, and over and over at the same farms that Starbucks represented to consumers as compliant with it's ethical standards.

5.      Starbucks responses to these abuses  contradicts its claim of "ethical sourcing" because in several instances, severe labor abuses were discovered shortly *after* certification occurred, or while under *active* C.A.F.E. certification. And in other instances, coffee farms

CLASS ACTION COMPLAINT - 2

Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

*retained* certification despite prior labor-law violations, government fines, or conditions so extreme that workers were formally rescued by authorities. And when these concerns were brought directly to Starbucks, even on repeated occasions, Starbucks has declined to provide any new or clarifying information on remedial efforts. Starbucks has thus persisted in presenting an unqualified ethical-sourcing message that it knows—or at minimum has long had reason to know—is not true.

6.      In addition, Plaintiffs bring additional claims on behalf of a subclass of consumers who purchased Starbucks Decaf Coffee Products,  as independent testing has detected the existence of volatile organic compounds ("VOCs") such as benzene, toluene, and methylene chloride are present in its decaffeinated coffee beans roasts. These types of VOCs are widely used in industrial applications such as paint removers, paint strippers, and other solvent products and are not typically associated with food production (and thus its existence in coffee beans sold by Starbucks is likely to surprise reasonable consumers). Yet the presence of such industrial solvents in Starbucks Coffee Decaf Products is not disclosed at the point of sale, and Starbucks' failure to do so is a material omission that is highly misleading to reasonable consumers.

7.      Plaintiffs assert claims on behalf of themselves and a class of consumers under Washington and New York consumer protection statutes and for common law fraud, seeking damages, restitution, and injunctive relief to stop Starbucks from continuing to market its coffee as "100% ethically sourced" or that Starbucks is "Committed to 100% Ethical Coffee Sourcing" unless and until that claim is truthful and adequately qualified. Plaintiffs also assert claims under Washington and New York consumer protection statutes and for common law fraud, on behalf of themselves and other purchasers of Starbucks Decaf Coffee Products, seeking damages, restitution, and injunctive relief to force Starbucks to disclose the existence of VOCs such as benzene, toluene, and methylene chloride in the coffee beans of its decaffeinated coffee bean products.

## II.      JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). There are at least 100 members in the proposed Washington and New York state Subclasses.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

9. Plaintiff Williams is a citizen of Washington state and consent to the jurisdiction of this Court.

10. Plaintiff Strauss is a citizen of New York.

11. Defendant Starbucks is incorporated in Seattle, Washington, which is located in this district. This district court therefore has general jurisdiction over Starbucks.

12. Also, the Court has personal jurisdiction over Starbucks because the claims herein arise from Starbucks transacting business in Washington. Starbucks operates many stores in Washington, has purposefully directed its marketing practices to Washington consumers, regularly conducts and transacts business in Washington, distributes the Starbuck Coffee Products throughout Washington, and has availed itself of the benefits and protections of Washington law, and it is, therefore, reasonable for Starbucks to anticipate being subject to an action in the courts of this District.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b)(2) because substantial acts in furtherance of alleged improper conduct, including the dissemination of false and misleading labeling and advertising regarding the nature and quality of the Starbuck Coffee Products at issue, occurred within this District; and because Defendant directs its marketing at consumers within Washington and has caused injury in Washington.

## III.   PARTIES

### A.   Plaintiffs

### 1.   Washington Plaintiff: Jennifer Williams

14. Plaintiff Jennifer Williams ("Plaintiff" for purposes of this section) is a citizen of Washington and a resident of Ferndale, WA. In 2022, and then again in 2024-2025, Plaintiff has routinely purchased Starbucks Coffee Products, including its Espresso Roast and Decaf House Blend ("Coffee Products" for purposes of this section), from the following stores located in Washington State: Fred Myers in Bellingham, WA; Costco in Bellingham, WA; and at Starbucks-owned C.A.F.E.s and retail venues located in and around King County and Whatcom County, Washington. At point of sale, Plaintiff saw and relied on the Deceptive Claims contained on Starbucks Coffee Products.

CLASS ACTION COMPLAINT - 4
Case No.: _____



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

15.     The labels and packaging of the Starbucks Coffee Products purchased by Plaintiff that were substantially similar to the examples included in § IV.B of this Complaint and included the following Deceptive Claims: Those representations included: (1) the statement "Committed to 100% Ethical Sourcing," prominently displayed on the front-of-pack of Starbucks Coffee Products; (2) implied references to Starbucks' C.A.F.E. Practices program, including use of the C.A.F.E. logo on certain products; (3) express references to Conservation International and the use of its logo on Starbucks Coffee Products packaging; and (4) the use of the term "100%," which reasonably conveys that human-rights violations at C.A.F.E.-certified farms are exceedingly rare or nonexistent. Taken together, these representations create the net impression that Starbucks actively verifies compliance with its ethical-sourcing standards, that such verification is accurate, current, and meaningfully enforced, to ensure that Starbucks Coffee Products are produced through an ethically controlled supply chain. Plaintiff reasonably understood these representations to mean that purchasing a Starbucks Coffee Product reflected a more ethical supply-chain choice than purchasing other, lower-priced coffee products that did not make comparable claims.

16.     At the time of purchase, Plaintiff did not observe any disclaimer, qualification, or explanatory statement on the packaging of Starbucks Coffee Products that would limit or clarify the prominent ethical-sourcing representations in a manner understandable to a reasonable consumer. Nowhere at the point of sale did Starbucks disclose material facts that would qualify those representations with the following Common Omissions: (1) that coffee farms in Starbucks' supply chain were disregarding Starbucks' own human-rights standards while continuing to receive or retain C.A.F.E. certification; and (2) that certain Starbucks Decaf Coffee Products contained volatile organic compounds ("VOCs"), including benzene, toluene, and methylene chloride.

17.     By uniformly communicating the "Committed to 100% Ethical Sourcing" representation and related ethical-sourcing cues at the point of sale—while simultaneously omitting the Common Omissions described above—Starbucks misled consumers into believing that its current sourcing practices effectively ensured respect for human rights via active enforcement of its C.A.F.E. certification program, and that its decaffeinated coffee products did not involve industrial chemical solvents not typically associated with food production. In reality, Starbucks Coffee

CLASS ACTION COMPLAINT - 5
Case No.: _____

1    Products is sourced from supply chains marked by recurring labor and human-rights violations, and

2    certain decaffeinated products contain VOCs that consumers are not informed about at purchase.

3    Had Starbucks disclosed the truth, Plaintiff would not have purchased the products or would have

4    paid less for them.

5           18.    Starbucks' unfair, unlawful, and deceptive conduct caused Plaintiff to suffer

6    economic injury. Plaintiff paid a price premium for Starbucks Coffee Products based on the

7    belief—created by Starbucks' point-of-sale representations—that the products were ethically

8    sourced and, in the case of decaffeinated coffee, free from undisclosed chemical solvents. As a

9    result, Plaintiff paid more than the true market value of the products at the time of purchase and

10    suffered an out-of-pocket overpayment for a promised ethical-sourcing and product-quality

11    attribute the products did not, in fact, possess. Plaintiff did not receive the benefit of the bargain

12    promised by Starbucks' representations and suffered out-of-pocket loss as a result.

13           19.    Plaintiff is a reasonable consumer without specialized knowledge regarding coffee

14    sourcing, certification systems, or decaffeination processes. During the Class Period, Plaintiff did

15    not know, and had no reasonable way of discovering, the omitted facts that rendered Starbucks'

16    ethical-sourcing claims misleading. Starbucks, by contrast, had access to information concerning

17    its supply-chain practices, certification failures, and decaffeination methods, and thus knew or

18    should have known that its point-of-sale representations were false or misleading.

19           20.    Plaintiff intends to purchase coffee products in the future and continues to encounter

20    Starbucks Coffee Products offered for sale with the same ethical-sourcing representations

21    challenged in this action. Plaintiff would consider purchasing Starbucks Coffee Products again if

22    the ethical-sourcing claims were truthful and adequately qualified. However, because Starbucks

23    continues to market its products using the same representations, Plaintiff is currently unable to rely

24    on those claims and faces a continuing risk of future harm absent injunctive relief.

25          **2.**    **New York Plaintiff: David Strauss**

26           21.    Plaintiff David Strauss ("Plaintiff" for purposes of this section) is a citizen of New

27    York and a resident of Irvington, New York. From 2007 to present, Plaintiff has routinely

28    purchased Starbucks Coffee Products, including its Decaf House Blend ("Coffee Products" for

CLASS ACTION COMPLAINT - 6

Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  purposes of this section), from the following stores located in New York State: Stop & Shop in

2  Tarrytown, NY, Shoprite in Elmsford, NY, and at Starbucks-owned C.A.F.E.s and retail venues

3  located in and around Westchester County, New York. At point of sale, Plaintiff saw and relied on

4  the Deceptive Claims contained on Starbucks Coffee Products.

5      22.    The labels and packaging of the Starbucks Coffee Products purchased by Plaintiff

6  that were substantially similar to the examples included in § IV.B of this Complaint and included

7  the following Deceptive Claims: Those representations included: (1) the statement "Committed to

8  100% Ethical Sourcing," prominently displayed on the front-of-pack of Starbucks Coffee Products;

9  (2) implied references to Starbucks' C.A.F.E. Practices program, including use of the C.A.F.E.

10  logo on certain products; (3) express references to Conservation International and the use of its

11  logo on Starbucks Coffee Products packaging; and (4) the use of the term "100%," which

12  reasonably conveys that human-rights violations at C.A.F.E.-certified farms are exceedingly rare or

13  nonexistent. Taken together, these representations create the net impression that Starbucks actively

14  verifies compliance with its ethical-sourcing standards, that such verification is accurate, current,

15  and meaningfully enforced, to ensure that Starbucks Coffee Products are produced through an

16  ethically controlled supply chain. Plaintiff reasonably understood these representations to mean

17  that purchasing a Starbucks Coffee Product reflected a more ethical supply-chain choice than

18  purchasing other, lower-priced coffee products that did not make comparable claims.

19      23.    At the time of purchase, Plaintiff did not observe any disclaimer, qualification, or

20  explanatory statement on the packaging of Starbucks Coffee Products that would limit or clarify

21  the prominent ethical-sourcing representations in a manner understandable to a reasonable

22  consumer. Nowhere at the point of sale did Starbucks disclose material facts that would qualify

23  those representations with the following Common Omissions: (1) that coffee farms in Starbucks'

24  supply chain were disregarding Starbucks' own human-rights standards while continuing to receive

25  or retain C.A.F.E. certification; and (2) that certain Starbucks Decaf Coffee Products contained

26  volatile organic compounds ("VOCs"), including benzene, toluene, and methylene chloride.

27      24.    By uniformly communicating the "Committed to 100% Ethical Sourcing"

28  representation and related ethical-sourcing cues at the point of sale—while simultaneously omitting

CLASS ACTION COMPLAINT - 7

Case No.: _____

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

the Common Omissions described above—Starbucks misled consumers into believing that its current sourcing practices effectively ensured respect for human rights via active enforcement of its C.A.F.E. certification program, and that its decaffeinated coffee products did not involve industrial chemical solvents not typically associated with food production. In reality, Starbucks Coffee Products are sourced from supply chains marked by recurring labor and human-rights violations, and certain decaffeinated products contain VOCs that consumers are not informed about at purchase. Had Starbucks disclosed the truth, Plaintiff would not have purchased the products or would have paid less for them.

25.    Starbucks' unfair, unlawful, and deceptive conduct caused Plaintiff to suffer economic injury. Plaintiff paid a price premium for Starbucks Coffee Products based on the belief—created by Starbucks' point-of-sale representations—that the products were ethically sourced and, in the case of decaffeinated coffee, free from undisclosed chemical solvents. As a result, Plaintiff paid more than the true market value of the products at the time of purchase and suffered an out-of-pocket overpayment for a promised ethical-sourcing and product-quality attribute the products did not, in fact, possess. Plaintiff did not receive the benefit of the bargain promised by Starbucks' representations and suffered out-of-pocket loss as a result.

26.    Plaintiff is a reasonable consumer without specialized knowledge regarding coffee sourcing, certification systems, or decaffeination processes. During the Class Period, Plaintiff did not know, and had no reasonable way of discovering, the omitted facts that rendered Starbucks' ethical-sourcing claims misleading. Starbucks, by contrast, had access to information concerning its supply-chain practices, certification failures, and decaffeination methods, and thus knew or should have known that its point-of-sale representations were false or misleading.

27.    Plaintiff intends to purchase coffee products in the future and continues to encounter Starbucks Coffee Products offered for sale with the same ethical-sourcing representations challenged in this action. Plaintiff would consider purchasing Starbucks Coffee Products again if the ethical-sourcing claims were truthful and adequately qualified. However, because Starbucks continues to market its products using the same representations, Plaintiff is currently unable to rely on those claims and faces a continuing risk of future harm absent injunctive relief.

CLASS ACTION COMPLAINT - 8
Case No.: _____

011357-11/3434477 V1

**B.      Defendant**

28.     Defendant Starbucks is a multinational chain of coffeehouses and roastery reserves headquartered in the Starbucks Center at 2401 Utah Ave. S, Suite 800, in Seattle, Washington. In 2023, Starbucks was "the leading coffee shop/C.A.F.E. chain in the United States," "with sales amounting to approximately $31.6 billion U.S. dollars."[3]

## IV.      FACTUAL ALLEGATIONS

**A.      A company's commitment to ethical supply chains is a material attribute to consumers.**

29.     Consumers today are sensitive to the human cost behind the products they buy and care deeply about the existence of exploitive labor practices in supply chains. For example, one national survey found that "60% of consumers would stop using a product if they knew that human trafficking or forced labor was used to create it"[4] and "35 percent of consumers would stop buying from brands they perceive as unethical even if there is no substitute available."[5]

30.     Child labor is especially material to reasonable consumers. For example, more than 75% of consumers said they were not likely to continue purchasing from clothing brands if they knew those brands were made with child labor.[6] Another survey, commissioned by the National Consumer League, "confirmed that Americans seem concerned that the food they purchase is not tainted by child labor. Nearly 6 in 10 survey respondents—59 percent—disagreed that 'it is acceptable for a child under 14 to work for wages in the fields, harvesting produce to be sold in grocery stores.' An even larger percentage—67 percent—said that the U.S. should not import products made or harvested by children under the age of 14."[7.]

---

[3] *Sales of Selected Leading Coffee Shop and C.A.F.E. Chains in the United States in 2023*, STATISTA (Apr. 2024), https://www.statista.com/statistics/919774/sales-of-selected-leading-coffee-house-and-C.A.F.E.-chains-in-the-us.

[4] Stephen DeAngelis, *Even If Consumers Aren't Aware of Human Trafficking, Companies Need to Be*, ENTERRA SOLUTIONS, (Mar. 6, 2020), https://www.enterrasolutions.com/insights/even-if-consumers-arent-aware-of-human-trafficking-companies-need-to-be.

[5] *56% of Americans Stop Buying From Brands They Believe Are Unethical*, MINTEL (Nov. 18, 2015), https://www.mintel.com/press-centre/56-of-americans-stop-buying-from-brands-they-believe-are-unethical/.

[6] *Majority (55%) of Americans Willing to Pay More for Clothing Not Made Using Child Labor*, IPSOS (July 18, 2013), https://www.ipsos.com/en-us/majority-55-americans-willing-pay-more-clothing-not-made-using-child-labor.

[7] Reid Maki, *American Public: Young Farmworkers Deserve Equal Protection of Child Labor Laws– Consumer Survey Finds Americans Concerned about Youth Working in Ag,* THE CHILD LABOR COALITION (July 21, 2011),

CLASS ACTION COMPLAINT - 9

Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  31.    As such, consumers are increasingly prioritizing "more transparency from food

2  producers and retailers," "accountability and transparency through the entire food supply chain,"

3  and "fair treatment of workers."[8] And consumers are very willing to choose specific products

4  and/or pay a price premium for such transparency and accountability.

5  32.    For example, analysis from a recent McKinsey & Co. study[9] showed U.S. sales data

6  from 2017 to June 2022 bears out the effects of such growing consumer preference for responsibly

7  produced goods. The McKinsey study found that products with corporate responsibility advertising

8  achieved disproportionate growth in sales compared to analogous products that were marketed

9  without corporate responsibility claims, including packaged coffee. Several studies also show that

10  consumers are willing to pay more for goods, and coffee in particular, that is ethically sourced. For

11  example, a 2009 study by a group of political scientists at the University of Connecticut found that

12  75 percent of coffee buyers report that they would be willing to pay 50 cents extra for a pound of

13  coffee (approximately 15% of the sales price) if it was certified as ethically produced.[10] Similarly,

14  a 2011 study led by researchers at Harvard University studied consumer willingness to pay a

15  premium for ethically sourced coffee that is produced without the use of forced or child labor. The

16  Harvard study found that consumers were willing to pay an average of 23% more for coffee

17  certified as ethically produced.[11] Finally, a 2019 study of almost a thousand consumers also found

18

19

20

21

22  https://stopchildlabor.org/american-public-young-farmworkers-deserve-equal-protection-of-child-labor-laws-consumer-survey-finds-americans-concerned-about-youth-working-in-ag-2/.

23  [8] *Consumer Survey Shows Changing Definition of Food Safety*, FOOD SAFETY NEWS (Feb. 4, 2016, 12:59 PM), https://www.foodsafetynews.com/2016/02/123246/.

24  [9] *Consumers Care About Sustainability—And Back it up with Their Wallets*, MCKINSEY & CO. (Jan 9, 2026), https://www.mckinsey.com/industries/consumer-packaged-goods/our-insights/consumers-care-about-sustainability-and-back-it-up-with-their-wallets.

25

26  [10] Hertel, Shareen, Lyle Scruggs, and C. Patrick Heidkamp. 2009. *Human Rights and Public Opinion: From Attitudes to Action,* POLITICAL SCIENCE QUARTERLY, 124 (3): 443- 459, https://academic.oup.com/psq/article-abstract/124/3/443/6964008.

27  [11] Michael J. Hiscox, Michael Broukhim & Claire S. Litwin, *Consumer Demand for Fair Trade: New Evidence from a Field Experiment Using eBay Auctions of Fresh Roasted Coffee* (Mar. 16, 2011), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1811783.

28

CLASS ACTION COMPLAINT - 10
Case No.: _____


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

that they were willing to pay twenty-two additional cents per ounce for coffee that directly benefited farmers and their communities.[12]

**B.    Starbucks touts its ethical supply chains via uniform consumer-facing representations prominently displayed at point-of-sale.**

33.    Starbucks knows of the consumer demand for ethically sourced products free of labor and human rights violations, as well as the market price premium that ethically sourced products command. To satisfy and capitalize on this growing consumer demand for ethically sourced products, Starbucks has launched a wide-ranging marketing campaign to brand and market itself not only as a responsible, socially conscious company, but as a leader in the field of ethical coffee. The flagship representation for this campaign is that Starbucks is "Committed to 100% Ethical Coffee Sourcing". This claim is uniformly printed in a prominent location on the front labels of all Starbucks Coffee Products. Below is an example of the Starbucks Coffee front labels for its ground coffee (sold on Starbucks.com)[13] and K-Cup Pods (sold on Amazon.com)[14]:



---

[12] Paul Hindsley, David M. McEvoy, & O. Ashton Morgan, *Consumer Demand for Ethical Products and the Role of Cultural Worldviews: The Case of Direct-Trade Coffee* (July 2020), https://www.sciencedirect.com/science/article/abs/pii/S0921800919317203?via%3Dihub.

[13] Decaf House Blend Ground, STARBUCKS, https://athome.starbucks.com/products/decaf-house-blend-ground (last visited Jan. 13, 2026).

[14] Starbucks Decaf House Blend Coffee K-Cup Pods, AMAZON, https://a.co/hvhFuf1 (last visisted Jan. 13, 2026).

CLASS ACTION COMPLAINT - 11

Case No.: _____

011357-11/3434477 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX



34.     Below are some more examples form other Starbucks Coffee Products which all uniformly include the same "Committed to 100% Ethical Coffee Sourcing" regardless of roast, and regardless of whether the coffee beans were sold at a Starbucks restaurant or via third party grocers (like Kroger) or retailers (like Amazon).  The same claim is also uniformly printed on packages for whole bean as well as ground coffee formats.





CLASS ACTION COMPLAINT - 12
Case No.: _____

35.    The back label on Starbucks Coffee Products reiterates and supplements information relating to the "Committed to 100% Ethical Coffee Sourcing" claim. Below are some examples from the back label of Starbucks Coffee Decaf Pike Place Blend, and the same ethical supply chain messaging is included on the back label of all Starbucks Coffee Products:





36.    By prominently claiming on the front label of all its Starbucks Coffee Products that Starbucks is "Committed to 100% Ethical Sourcing", Starbucks creates a net impression that it currently takes active steps to verify that the coffee beans used in its products complies with Starbucks' own C.A.F.E. ethical sourcing standards. Starbucks also implies that this certification is accurate, current, and meaningfully enforced by Starbucks at time of purchase. Using the numerical "100%" also implies to a reasonable consumer that Starbucks has a robust system so that any incidents of material non-compliance are properly identified, remediated and ultimately excluded

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

011357-11/3434477 V1

from the coffee sold to consumers. Moreover, Starbucks' references to Conservation International serves as a "credibility amplifier" by implying to reasonable consumers that Starbucks coffee is subject to third-party evaluation, certification, and endorsement.

37.     In contrast, Starbucks chooses to prominently claim that it is 100% Committed to Ethical Coffee Sourcing in a prominent location (and repeat the same claim in other locations on the package) because Starbucks knows that this claim is material to reasonable consumers.

**C.     Starbucks knows that claims relating to ethical supply chains are material to consumers.**

38.     The C.A.F.E. Practices program is the "cornerstone of [Starbucks's] ethical sourcing approach."  C.A.F.E. exists to "verify that all Starbucks coffee is grown, processed, and traded in an economically, socially, and environmentally responsible manner." Starbucks acknowledges that its C.A.F.E. is "designed to promote transparent, profitable and sustainable coffee growing practices while also protecting the well-being of coffee farmers and workers, their families and their communities."[15] The materiality of "ethical sourcing" is evidenced by this statement that appears on the first substantive page of the 2024 annual report: "We are committed to responsible and ethical sourcing led by Coffee and Farmer Equity Practices ("C.A.F.E. Practices"), the Company's third-party verification program and the cornerstone of our approach to ethical sourcing of coffee with over 98% of our coffee having been historically verified through C.A.F.E. Practices as ethically sourced. Human Capital Management".

39.     Starbucks advertises that its use of "ethical sourcing programs integrate[s] respect for human rights throughout" its supply chain by setting standards and implementing procedures that protect "rights such as: . . . the right to be free from forced and child labor" and "the right to just and favorable working conditions, including ensuring the health and safety of workers."[16]

40.     The C.A.F.E. Practices consist of dozens of human rights indicators that Starbucks claims are evaluated by a third-party inspector. Some indicators, addressing the most serious

---

[15] Coffee, STARBUCKS, https://www.starbucks.com/responsibility/sourcing/coffee/ (last visited Jan. 13, 2026).

[16] *See Global Human Rights Statement,* STARBUCKS STORIES & NEWS (Nov. 17, 2020), stories.starbucks.com/press/2020/global-human-rights-statement/.

CLASS ACTION COMPLAINT - 14
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

human rights violations, are the "minimum requirements for participation" in the program and are claimed to be subject to a "Zero Tolerance" policy.  Those minimum requirements include:

- that all workers are paid the legal minimum wage, a collectively-bargained-for wage, or if neither applies, a wage set in the Practices;

- that no forced, bonded, indentured, convict, or trafficked labor be used;

- that physical, sexual, verbal, and psychological harassment is prohibited;

- that no child labor occurs, except where light work and/or family work is permissible by law and is done in compliance with all local laws, and with minors prohibited from handling chemicals, using heavy machinery, or lifting heavy loads;  and

- that any worker housing is safe, includes water and sanitary facilities, and is free of harmful or irritating substances.

41.    When Starbucks is notified of a Zero Tolerance violation, it promises to take "immediate action, conducting an investigation which could lead to suspending the commercial relationship with a farm until the case has been clarified." If there is a violation, Starbucks "may ask our supplier to work with a farm to address any issue including the development of a work plan describing how the issue will be corrected."  However Starbucks also ensures that "[f]arms that fail to meet the zero-tolerance indicators [compliance with minimum wage law and absence of forced or child labor] are not allowed to participate in the program until corrective action is taken and correction is confirmed."[17] Starbucks claims that, in this way, it "protect[s] the well-being of coffee farmers and workers, their families and their communities."[18] As of 2023, Starbucks asserted that "99.7%" of its coffee for fiscal year 2023 was "ethically sourced and verified through C.A.F.E. Practices."

42.    Starbucks also purports to enforce the Starbucks Supplier Code of Conduct that specifically prohibits: (1) using forced or involuntary labor, including bonded, indentured, and imprisoned labor; (2) using child labor; (3) forcing employees to pay recruitment fees; (4)

---

[17] Module 5.9 – Social Responsibility, at https://starbucksglobalacademy.com/explore/ (select Coffee Academy 300) (last visited Jan. 13, 2026).

[18] Coffee, STARBUCKS, https://www.starbucks.com/responsibility/sourcing/coffee/ (last visited Jan. 13, 2026).

CLASS ACTION COMPLAINT - 15
Case No.: _____

011357-11/3434477 V1

1  mistreating migrant workers; (5) violating workers' rights laws; (6) illegal denial of collective

2  bargaining; (7) creating an unsafe or unhealthy working environment; (8) engaging in

3  discrimination; and (9) violating laws regarding indigenous peoples. The Code of Conduct also

4  includes the general requirement that suppliers comply with local laws and regulations and engage

5  in responsible sourcing practices. [19]

6      43.    Starbucks also knows that its partnership with Conservation International is material

7  to reasonable consumers because Starbucks affirmatively invokes that partnership and prints

8  Conservation International's logo on all its Starbucks Coffee Products to lend credibility,

9  legitimacy, and apparent independence to its ethical-sourcing claims.



21      44.    On its packaging, Starbucks does not reference Conservation International as a

22  neutral historical fact; it does so in direct connection with representations that its coffee is ethically

23  sourced and responsibly produced. By associating its sourcing practices with a well-known

24  nonprofit organization dedicated to sustainability and social responsibility, Starbucks signals to

25  consumers that its ethical claims are independently informed, rigorously developed, and

26  trustworthy. Starbucks' repeated reliance on this partnership to bolster its ethical-sourcing message

27  _____

28      [19] Module 5.9 – Social Responsibility, at https://starbucksglobalacademy.com/explore/ (select Coffee Academy 300) (last visited Jan. 13, 2026).

CLASS ACTION COMPLAINT - 16
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

reflects its understanding that consumers place weight on third-party validation when evaluating claims about labor conditions in opaque global supply chains, and that the involvement of a respected nonprofit materially affects purchasing decisions.

45.    Starbucks' use of the partnership therefore demonstrates its own recognition that the association with Conservation International is important to consumers' understanding of—and reliance on—its ethical-sourcing representations.

**D.    Starbucks' Deceptive Claims are misleading due to Starbucks' inaction to systematic human rights and labor law violations in its supply chain.**

46.    Publicly available investigations and enforcement actions have identified serious labor and human-rights violations at coffee farms participating in Starbucks' C.A.F.E. Practices program, notwithstanding Starbucks' uniform representations that the program ensures ethical sourcing. These violations are incompatible with Starbucks being "100% Committed to Ethical Coffee Sourcing".

47.    The documented violations are not confined to isolated incidents or historical misconduct. Rather, they span multiple years, involve numerous suppliers, and have been identified across multiple countries and regions, including Brazil, China, Guatemala, and Mexico. In many instances, the violations were identified while farms were actively certified under C.A.F.E. Practices or shortly after certification or renewal had been granted.

48.    In addition, some farms retained C.A.F.E. certification despite known prior labor-law violations, government enforcement actions, or working conditions so severe that workers were formally rescued by authorities. When these conditions were brought to Starbucks' attention—including through repeated communications—Starbucks did not disclose any meaningful corrective action, suspension, or remediation to consumers. The frequency, severity, and geographic scope of these documented violations undermine the accuracy of Starbucks' unqualified ethical-sourcing representations and call into question whether C.A.F.E. certification functions as consumers are led to believe at the time of purchase.

49.    Below are some examples of human rights and labor law violations on C.A.F.E. certified farms and coffee plantations, reported by well-regarded investigative journalists and non-

CLASS ACTION COMPLAINT - 17
Case No.: _____



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1    governmental organizations. Also below is the indifference and non-action from Starbucks after

2    being repeatedly contacted with these concerns.

3         50.    In the summer of 2015, Brazilian labor inspectors cited at least two coffee farms

4    certified under Starbucks' C.A.F.E. Practices program for violations of Brazilian labor law.[20] The

5    cited violations included unsafe working conditions arising from the improper storage and use of

6    pesticides near workers' eating areas and living quarters, as well as failures to provide legally

7    required employment benefits. At the time the violations were identified, both farms had recently

8    undergone verification and had their C.A.F.E. certification renewed earlier that same year.

9         51.    In 2018, workers from the C.A.F.E. certified, Fartura farm, in Piuhmi, Minas

10   Gerais, Brazil were found to be subject to "degrading working conditions" and "wretched housing"

11   that was covered in mold and infested with insects and rats, and that lacked proper water and

12   sewage.[21]   Dead bats were present in the workers' water tank. And yet, Fartura had been C.A.F.E.

13   certified since 2016.

14        52.    That same year, investigative journalists with Reporter Brasil reported that workers

15   at the C.A.F.E.-certified Cedro II farm in Minas Gerais, Brazil, were compelled to work 17-hour

16   shifts and sleep in unsanitary housing.[22]   These workers eventually filed complaints against

17   Starbucks and five other coffee companies with Brazil's National Contact Point for the OECD

18   Guidelines alleging a failure to carry out proper human rights due diligence to identify, prevent,

19   mitigate, and account for risks of forced labor and other rights violations in their supply chain.[23]

20   Yet despite these complaints, Starbucks did not revoke Cedro II's C.A.F.E. certification until years

21   later.[24]

22   _____

[20] Poliana Dallabrida, André Campos & Elaine Almeida, *Certified Coffee, Rightless Workers 2*, MONITOR (Marcel
23   Gomes ed., Repórter Brasil June 2021), https://konzernverantwortung.ch/wp-content/uploads/2025/04/Monitor-
     C.A.F.E.-2021-EN-final.pdf.

24   [21] Daniela Penha and Roberto Cataldo, *Investigators Find Slave Labor on Starbucks-Certified Brazil Coffee
     Plantation*, ECOWATCH (Sep. 19, 2018), https://www.ecowatch.com/slave-labor-starbucks-certified-brazil-coffee-
25   plantation-2606260085.html.

     [22] Daniel Camargos, *Slave labor found at second Starbucks-certified Brazilian coffee farm,* MONGABAY (May 3,
26   2019), https://news.mongabay.com/2019/05/slave-labor-found-at-second-starbucks-certified-brazilian-coffee-farm/.

     [23] Complaint, *Conectas Human Rights & ADERE MG v. Illy* (Aug. 21, 2018),
27   https://www.oecdwatch.org/complaint/conectas-human-rights-adere-mg-v-illy/.

     [24] Daniel Camargos, *Slave Labor Found at Second Starbucks-Certified Brazilian Coffee Farm*, MONGABAY (May
28   3, 2019), https://news.mongabay.com/2019/05/slave-labor-found-at-second-starbucks-certified-brazilian-coffee-farm/.

CLASS ACTION COMPLAINT - 18
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

53.     Recent investigation by the Center for Research on Multinational Corporations (SOMO) found extensive human rights violations in coffee plantations in Brazil, which SOMO identified a failure of certification schemes.[25]  According to SOMO, when companies "purport to ensure the ethical sourcing of coffee through industry certification and auditing schemes … new revelations of modern slavery on certified farms accumulate." Id. For example, in July 2022, SOMO identified Fazenda Klem farm in Manhumirim, Minas Gerais, which had been certified by Starbucks' C.A.F.E. Practices as having major violations. The workers were forced to harvest coffee in bare feet and socks without protective footwear or safety equipment. They were given no shelter for meals during the workday. Their accommodation was substandard too, with no working bathroom, no place to store food, and low-quality water.[26]

54.     Also in 2022, Brazil's independent labor prosecutor initiated formal proceedings against Cooxupé, Starbucks' largest coffee supplier in Brazil and a cooperative certified under C.A.F.E. Practices.[27] Cooxupé encompasses more than 2,000 farms and supplies approximately 40% of Starbucks' Brazilian coffee. The labor prosecutor's complaint cited multiple Cooxupé-affiliated farms for requiring workers to carry coffee sacks weighing more than 100 pounds and for imposing excessive working hours. Notwithstanding these findings, Starbucks continued sourcing coffee from Cooxupé, which remained certified under C.A.F.E. Practices.

55.     Violations also occurred at the Cedro I and Conquista farms, which operate as a joint entity and cover 500 acres in southern Minas Gerais, Brazil.[28] In July 2022, just one year after the entity was certified by C.A.F.E. Practices, SOMO discovered evidence of minors working under illegal conditions.  Moreover, workers were not provided with water in the fields, nor were they given protective equipment like gloves, hats, or boots. Accommodations had no bedding or places to prepare meals. Workers were forced to pay for transportation to and from the farm, food

---

[25] *Bitter Brew: Modern Slavery and the Coffee Industry* at 2-3, SOMO (Jan. 10, 2024), https://www.somo.nl/bitter-brew/ ("Bitter Brew") (PDF to download).

[26] *Id.* at 7.

[27] Hélen Freitas and Poliana Dallabrida, *Starbucks: slave and child labour found at certified coffee farms in Minas Gerais*, REPÓRTER BRASIL (Nov. 14, 2023), https://reporterbrasil.org.br/2023/11/starbucks-slave-and-child-labour-found-at-certified-coffee-farms-in-minas-gerais/

[28] *Id.*

CLASS ACTION COMPLAINT - 19
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1    during those journeys, all of which is illegal under Brazilian law. When Repórter Brasil followed

2    up in 2023, it learned that workers were having to work seven days a week, often at night, while

3    being paid extremely low wages.  And yet, the Cedro farm maintained its C.A.F.E. Practices

4    certification for over a full year after it became clear that child labor and worker abuse were taking

5    place there.

6        56.    In August 2022, a third-party investigation of the Mesas Farm in Brazil revealed

7    minors working in outdoor work and carrying coffee sacks weighing over 130 pounds.[29] The

8    Mesas farm did not provide legally required personal protective equipment, nor provide written

9    work agreements—as required by Brazilian law. Nevertheless, the Mesas Farm maintains C.A.F.E.

10   certification.

11       57.    Other C.A.F.E. Practices-certified farms found to be mistreating workers were the

12   Bernandes Estate Coffee farms in Patrocinio, Minas Gerais, Brazil. Bernandes Estate Coffee was

13   fined in 2019 and again in 2022 for not keeping records of workers' wages, not providing training,

14   not providing personal protective equipment, not providing free first aid, not providing enough

15   toilet paper or access to bathing, not giving workers adequate places to eat meals, and not ensuring

16   access to safe water.[30] When Starbucks was contacted by Repórter Brasil in August 2023,

17   Starbucks confirmed that Bernandes was still C.A.F.E. certified.

18       58.    The Pedreia farm in Cabo Verde, Minas Gerais, Brazil is yet another C.A.F.E.

19   Practices-certified operation with serious human rights violations.[31] The farm had been fined in

20   2021 and 2022 for forcing workers to pay for the fuel needed to harvest coffee and for not paying

21   workers' benefits. Repórter Brasil investigated and found workers were not provided with a

22   suitable place to eat in their accommodations, nor with bedding, blankets, and pillows. They were

23   forced to both drink and bathe using water kept in an old fuel tank.  And the employer also refused

24   to transport workers to the hospital when sick or injured." When Starbucks was questioned about

25

26       [29] See Hélen Freitas & Poliana Dallabrida, *Behind Starbucks Coffee: Brazil's Seasonal Harvest Labourers Report Routine of Low Wages, Cold Food and Even Slave Labour on Farms that Supply the World's Most Famous Coffee Shop Chain*, REPÓRTER BRASIL (Naira Hofmeister ed., Oct. 2023), https://reporterbrasil.org.br/wp-

27   content/uploads/2023/11/monitor_starbucks_coffee_slave_labor_ENG.pdf, at 11-12. ("Behind Starbucks Coffee")
        [30] Behind Starbucks Coffee at 7.

28       [31] *Id.*

CLASS ACTION COMPLAINT - 20
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

these practices, it described the farm's certification as "expired." But Starbucks would provide no further information, or explanation for what appeared to be years of human rights abuses on a C.A.F.E. Practices-certified farm before "expiration" of the certification.

59.    In May 2023, investigative journalists reported that workers at Piedade Farm, a C.A.F.E. Practices-certified Starbucks coffee supplier, had similarly been subject to extreme wage theft.[32] In the previous harvest, workers at Piedade had been forced to pay more than a third of their wages from harvesting back to the farm, ostensibly to cover the cost of the machinery necessary to harvest coffee beans. This was a blatant violation of Brazilian law, which requires agricultural employers to provide all equipment necessary for harvest, in good condition and free of charge to their employees.

60.    These human rights and labor law violations by C.A.F.E. certified farms are not only based in Brazil but around the world. For example, a 2020 report form the United Kingdom's Channel 4 Dispatches program documented children under the age of thirteen working 40- to 50-hour weeks on five different C.A.F.E. certified farms in Guatemala.[33] The Guatemalan farms identified in the Dispatches exposé had been "verified" by Starbucks' C.A.F.E. Practices program in 2019, the same year that the Dispatches investigators uncovered and filmed the widespread child labor.

61.    Similarly, China Labor Watch found extensive violations of human rights on Starbucks C.A.F.E. Practices-certified farms, as well as on "uncertified smallholder farms hidden in these brands' supply chains" in China.[34]  Those violations included:

- Child labor. Children "help with tasks like picking coffee, especially during school breaks, despite exposure to agrochemicals in unsafe living conditions";

---

[32] Poliana Dallabrida, *Starbucks supplier farm ignores law and fails to provide coffee harvesting machine, workers say*, REPÓRTER BRASIL (May 15, 2023), https://reporterbrasil.org.br/2023/05/starbucks-supplier-farm-ignores-law-and-fails-to-provide-coffee-harvesting-machine-workers-say/.

[33] News Release, *Dispatches: Starbucks and Nespresso: The Truth About Your Coffee*, CHANNEL4.COM (Mar. 1, 2020), https://www.channel4.com/press/news/dispatches-starbucks-and-nespresso-truth-about-your-coffee

[34] *Ghost Farms and Coffee Laundering: How Labor Violations Enter Starbucks' and Nestlé's Chinese Coffee Supply Chain at 2*, COFFEE WATCH (Nov. 29, 2024), https://coffeewatch.org/documents/22/Ghost-Farms-and-Coffee-Laundering_Abuses-in-Nestle-and-Starbucks-Chinese-coffe_fWDTlsu.pdf.

CLASS ACTION COMPLAINT - 21

Case No.: _____



- Low wages. Coffee workers are barely paid minimum wage, and some rely on family members, including minors, for support;

- Excessive hours. Workers typically work seven days a week from sunrise to sunset, violating legal limits;

- Lack of medical insurance;

- No protective equipment. Workers without protection are exposed to injuries like hand wounds, bug bites, and to agrochemicals.

62.    Violations also occurred on Starbucks-supplying farms in Mexico. Mexican coffee farmers find themselves "trapped in abusive labor practices, a cycle of debt and systemic marginalization," a harm that disproportionately falls on indigenous people.[35]  According to the farmers, the C.A.F.E. Practices program "prioritizes the export of high-quality organic coffee at the expense of the socioeconomic well-being of coffee growers in regions such as the Sierra Madre de Chiapas and the El Triunfo Biosphere Reserve."[36]

63.    Across countries, years, and suppliers, farms certified under Starbucks' C.A.F.E. Practices program have repeatedly been found to engage in serious human-rights and labor-law violations, including forced labor, child labor, hazardous working conditions without protective equipment, and substandard and degrading living conditions. These findings were documented by government labor inspectors, investigative journalists, and non-governmental organizations, often while the farms remained actively certified under Starbucks' ethical-sourcing program. The persistence and recurrence of these violations—despite Starbucks' purported safeguards—demonstrate systemic failures in the design, implementation, and enforcement of C.A.F.E. Practices.

64.    Starbucks received direct notice of these violations through investigative reporting, public complaints, and communications from labor advocates, but did not disclose those facts to consumers or qualify its point-of-sale ethical-sourcing representations. Instead, Starbucks

---

[35] Press Release, *Exploitation and Opacity: The Hidden Reality of Mexican Coffee in Nestlé and Starbucks Supply Chains*, COFFEE WATCH (Feb. 14, 2025), https://coffeewatch.org/exploitation-and-opacity/.

[36] *Exploitation and Opacity: The Hidden Reality of Mexican Coffee in Nestle and Starbucks Supply Chains* at 32, COFFEE WATCH (Feb. 2025), https://coffeewatch.org/documents/23/Exploitation_and_Opacity_-_ENG_Final.pdf.

CLASS ACTION COMPLAINT - 22
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1  continued to market its coffee products to Washington and New York consumers as "100%

2  ethically sourced," presenting ethical sourcing as a verified and current product attribute despite

3  deficiencies in certification enforcement and remediation. As a result, consumers were induced to

4  purchase Starbucks Coffee Products at prices that reflected ethical assurances the products did not

5  in fact possess.

6        65.    Reasonable consumers do not know the conditions faced by coffee farmers growing

7  coffee for Starbucks in rural Brazil, China, Guatemala, and Mexico. Instead, they rely on

8  Starbucks' claim to be "Committed to 100% Ethical Coffee Sourcing". A reasonable consumer

9  who reads those representations comes away with an image of Starbucks as in control of the

10  conditions on its suppliers' farms, applying stringent human rights protections consistently and

11  effectively, and having eradicated human rights violations across nearly the entirety of its supply

12  chain. But none of that is true, as demonstrated by the widespread and systematic human rights

13  violations at Starbucks supplier farms, and Starbucks unwillingness to take action to enforce its

14  ethical standards and provide adequate follow-up and remediation.

15  **E.**    **Starbucks also conceals material information regarding the existence of industrial**
16          **solvents and VOCs in Starbucks Decaf Coffee Products.**

17        66.    Most Americans drink coffee daily. A 2025 survey found that 66% of American

18  adults had coffee in the last day—more than any other beverage, including water.[37] Consumers find

19  exposure to certain chemicals to be material to the products they purchase. For example, in a

20  survey of 1,200 registered voters, 93% agreed, and 63% strongly agreed, that companies "should

21  do a better job of removing harmful chemicals from consumer products." Similarly, 93% agreed,

22  and 57% strongly agreed, that it is "important for companies to keep harmful chemicals out of

23  everyday products, even if it increases costs for some products."[38]

24

25

---

26  [37] Press Release, *More Americans Drink Coffee Each Day Than Any Other Beverage, Bottled Water Back in
27  Second Place*, NATIONAL COFFEE ASSOCIATION (Apr. 15, 2025), https://www.ncausa.org/Newsroom/More-Americans-Drink-Coffee-Each-Day-Than-Any-Other-Beverage-Bottled-Water-Back-in-Second-Place.

28  [38] *Public Opinion on Chemicals*, UCSF PROGRAM ON REPRODUCTIVE HEALTH AND THE ENVIRONMENT (Oct. 11, 2022), https://prhe.ucsf.edu/public-opinion-chemicals.

CLASS ACTION COMPLAINT - 23
Case No.: _____

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1       67.    Also, decaffeinated coffee is usually consumed by pregnant women or people with

2  health conditions that require caution around caffeine.[39] This shows that the decision to purchase

3  decaffeinated coffee is health-based for many consumers. In fact, one survey found that 47.4% of

4  consumers who chose to drink decaffeinated coffee did so due to "health concerns and caffeine

5  sensitivity."[40]

6       68.    Starbucks sells its Decaf House Blend Medium Roast Coffee and other Starbucks

7  Decaf Coffee Products. It also represents on the front label of these packages that its ingredients

8  are limited to "100% Arabica coffee":



21       69.    This representation reasonably conveys a product composed solely of coffee beans

22  and reinforces consumer expectations of purity and minimal additional processing. Starbucks

23  omits, however, that the Starbucks Decaf Coffee Products contain detectable levels of industrial

24  solvents and other VOCs introduced during decaffeination, manufacturing, and packaging

---

[39] Janae Bowens, *Decaf Dilemma: Critics Demand Ban on Popular Method Over Cancer Risk Concerns*, CBS AUSTIN (May 31, 2024, 1:24 PM), https://cbsaustin.com/news/nation-world/decaf-dilemma-critics-demand-ban-on-popular-method-over-cancer-risk-concerns-methylene-chloride-european-beans-clean-label-project-environmental-defense-fund.

[40] Dr. Maria Panagiotidi, *Decaf Coffee Survey Results Part I*, Decaf Before Death (Aug. 11, 2024), https://decafbeforedeath.substack.com/p/decaf-coffee-survey-results-part.

CLASS ACTION COMPLAINT - 24
Case No.: _____

011357-11/3434477 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1    processes within Starbucks' control. By emphasizing varietal purity while concealing the presence

2    of non-coffee chemical substances, Starbucks creates a misleading net impression that the product

3    consists exclusively of coffee.

4           70.    Independent testing facilitated by Plaintiff's counsel detected the presence of

5    methylene chloride, benzene, and toluene in Starbucks' Decaf House Blend Medium Roast Coffee.

6    Testing was conducted by Eurofins EAG Laboratories between January 14 and 17, 2025, using

7    Purge and Trap Gas Chromatography with Mass Spectrometry (P&T-GC/MS), a standard

8    analytical method for detecting and quantifying VOCs.

9           71.    The testing detected methylene chloride at 22 parts per billion. Although the Federal

10   Drug Administration permits limited residual methylene chloride in decaffeinated coffee, this is not

11   a finding that the chemical is benign or desirable in food. Moreover, other regulators—including

12   the EPA and the State of California—recognize methylene chloride as a carcinogen and

13   reproductive toxicant. For example the EPA warns that "consumers should not use any products

14   containing methylene chloride," as it "presents unreasonable risk to human health."[41] The State of

15   California has also added methylene chloride to its Proposition 65 list "because it can cause

16   cancer" and "[d]uring pregnancy, methylene chloride can pass from mother to baby."[42] And

17   according to the State of Vermont: "Methylene chloride causes certain types of cancers in animals

18   and may affect the development and the brain and spinal cord of unborn babies. Studies show that

19   humans can have these same health effects from methylene chloride."[43] Thus, the presence of

20   methylene chloride in coffee therefore raises material safety and consumer-information concerns,

21   particularly where alternative decaffeination methods exist.

22          72.    Testing also detected benzene at 28 parts per billion. Benzene is a known human

23   carcinogen associated with blood disorders, including leukemia.[44] The EPA has determined that no

24   ───────────────────────────

25      [41] *Final Risk Evaluation for Methylene Chloride*, EPA, https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/final-risk-evaluation-methylene-chloride (last visited Jan. 13, 2026).

26      [42] *Methylene Chloride (Dichloromethane), Proposition 65 Warnings*, CAL. ENV'T PROT. AGENCY, https://www.p65warnings.ca.gov/fact-sheets/methylene-chloride-dichloromethane (last visited Jan. 13, 2026).

27      [43] *Methylene Chloride (Dichloromethane)*, VT. DEPT. OF HEALTH (Nov. 2018), https://www.healthvermont.gov/sites/default/files/documents/pdf/ENV_CDP_75_09_2_MethyleneChloride.pdf

28      [44] *Benzene*, U.S. Ctr. for Disease Control and Prevention (Sept. 6, 2024), https://www.cdc.gov/chemical-emergencies/chemical-fact-sheets/benzene.html.

CLASS ACTION COMPLAINT - 25
Case No.: _____

011357-11/3434477 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1   amount of benzene in drinking water above 5 parts per billion is acceptable due to cancer risk.[45]

2   And although FDA has not established a formal tolerance for benzene in beverages, it has stated

3   that benzene should be present only at trace, unavoidable levels. Benzene is listed under

4   California's Proposition 65 as a chemical known to cause cancer. Othe California Office of

5   Environmental Health Hazard ("OEHHA") has established a No Significant Risk Level for

6   benzene of 10 micrograms per day. At the detected concentration, a single serving of the product

7   exposes consumers to benzene at or near that threshold, triggering Proposition 65's warning

8   requirement. The Environmental Protection Agency (EPA), the Department of Health and Human

9   Services (DHHS), and the International Agency for Research on Cancer (IARC) have all classified

10  benzene as a Group A carcinogen, which means that it is carcinogenic to humans. Nevertheless,

11  Starbucks did not disclose this expose, despite exclusive knowledge of product testing and being

12  aware, or should have been aware, that a reasonable consumer would consider exposure to a

13  carcinogen material in deciding to purchase a product and at what price.

14          73.     Finally, testing also detected toluene at 87 parts per billion. Toluene is listed by the

15  State of California as a chemical known to cause reproductive toxicity and is also included under

16  California's Proposition 65. It is not authorized for use as a food ingredient or processing aid and is

17  commonly associated with industrial solvents, packaging materials, and manufacturing processes

18  rather than ingestible products. The presence of toluene in a consumable product like coffee

19  beans—at any detectable level—reflects avoidable contamination Starbucks' control and is

20  information a reasonable consumer would consider material in deciding whether to purchase the

21  product."[46]

22          74.     The presence of these solvents and VOCs is material to reasonable consumers.

23  Consumers purchasing decaffeinated coffee—many of whom do so for pregnancy, health-related,

24  sensitivity-related, or lifestyle reasons—would reasonably expect disclosure of non-coffee

25

26          [45] *Questions and Answers on the Occurrence of Benzene in Soft Drinks and Other Beverages*, U.S. FOOD & DRUG
        ADMIN. (Feb. 25, 2022), https://www.fda.gov/food/environmental-contaminants-food/questions-and-answers-
27      occurrence-benzene-soft-drinks-and-other-beverages.

        [46] *Medical Management Guidelines for Toluene*, AGENCY FOR TOXIC SUBSTANCES & DISEASE REGISTRY,
28      https://wwwn.cdc.gov/TSP/MMG/MMGDetails.aspx?mmgid=157&toxid=29 (last visited Jan. 13, 2026).

CLASS ACTION COMPLAINT - 26
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1  chemical substances introduced during industrial processing, particularly where such substances

2  are associated with manufacturing solvents, packaging materials, or chemical extraction methods

3  rather than coffee itself. Starbucks' omission deprived consumers of important information

4  necessary to evaluate the nature, quality, and value of the product at the time of purchase.

5      75.    Starbucks had exclusive knowledge of these facts. Starbucks controlled the

6  decaffeination method, sourcing, processing, packaging, and quality-assurance testing for its

7  decaffeinated coffee products and either knew or should have known that its finished products

8  contained detectable levels of industrial solvents and VOCs. Consumers had no independent means

9  to discover this information prior to purchase, and Starbucks did not disclose it on product labels or

10  at the point of sale.

11      76.    By choosing to affirmatively market its product as "100% Arabica coffee," while

12  omitting material facts regarding avoidable chemical contamination introduced during processing,

13  Starbucks rendered its representations misleading. These omissions were likely to mislead

14  reasonable consumers acting reasonably under the circumstances as these VOCs are not normally

15  found in food products. Starbucks' deceptive omissions caused Plaintiffs and class members to

16  purchase the product under the false impression that it consisted exclusively of coffee and to pay a

17  price premium they otherwise would not have paid had the omitted information been disclosed.

18      77.    Plaintiffs do not allege that Starbucks violated any federal food-safety regulation,

19  exceeded any FDA residue limit, or failed to include information expressly required by federal law.

20  Plaintiffs do not seek to privately enforce the Federal Food, Drug, and Cosmetic Act or impose

21  additional labeling requirements. Rather, Plaintiffs challenge Starbucks' voluntary marketing

22  representations and the misleading omissions that render those representations deceptive under

23  parallel state consumer-protection laws.

24      78.    Having elected to market its coffee as pure, responsibly produced, and subject to

25  rigorous oversight, Starbucks assumed a duty to disclose material qualifying information necessary

26  to ensure that its representations were not misleading. Plaintiffs' claims arise from Starbucks'

27  failure to disclose such information, not from any alleged deficiency in federally mandated

28  labeling, and are therefore not preempted.

CLASS ACTION COMPLAINT - 27

Case No.: _____

HAGENS BERMAN

1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1    **F.    Plaintiffs and consumers have been injured by Starbucks' Deceptive Claims.**

2    79.    For more than ten years Starbucks has been able to charge a price premium by

3    prominently printing its Deceptive Claims on the front labels of Starbucks Coffee Products and by

4    omitting disclosure of the existence of volatile organic compounds ("VOCs") in Starbucks Decaf

5    Coffee Products. Starbucks did so because it knows that ethical sourcing, labor practices, and

6    product purity are material attributes to reasonable consumers and directly affect consumers'

7    willingness to pay.

8    80.    Starbucks' Deceptive Claims were value-bearing product attributes that allowed

9    Starbucks to charge, and consumers to pay, more for Starbucks Coffee Products than they would

10   have paid absent those claims. By uniformly representing at the point of sale that it is "Committed

11   to 100% Ethical Coffee Sourcing," reinforced by references to C.A.F.E. Practices, "zero-tolerance"

12   labor standards, and Conservation International, Starbucks conveyed that its coffee commanded a

13   higher market value because it was produced under effective and meaningfully enforced human-

14   rights safeguards.

15   81.    In a but-for world in which Starbucks disclosed the truth about its supply-chain

16   practices—including the recurring forced labor, child labor, wage theft, unsafe working conditions,

17   and other serious violations occurring on C.A.F.E.-certified farms, as well as Starbucks' failure to

18   take meaningful corrective action when confronted with those violations—the market value of

19   Starbucks Coffee Products would have been materially lower. Reasonable consumers would have

20   discounted the products, chosen lower-priced alternatives, or declined to purchase Starbucks

21   Coffee Products altogether.

22   82.    Plaintiffs and Class members therefore paid more than the true market value of

23   Starbucks Coffee Products at the time of purchase and suffered out-of-pocket overpayment for a

24   promised ethical-sourcing attribute the products did not, in fact, possess. Plaintiffs did not receive

25   the benefit of the bargain promised by Starbucks' Deceptive Claims and suffered ascertainable

26   economic loss as a result.

27   83.    Starbucks similarly charged a price premium for Starbucks Decaf Coffee Products

28   by marketing them as pure coffee, including through the "100% Arabica coffee" representation,

CLASS ACTION COMPLAINT - 28
Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

while omitting material facts regarding the presence of VOCs introduced during decaffeination, manufacturing, and packaging processes within Starbucks' control. Consumers purchasing decaffeinated coffee—many of whom do so for health-related, pregnancy-related, or sensitivity-related reasons—would reasonably consider such chemical exposure material in deciding whether to purchase the product and at what price.

84.    In a but-for world in which Starbucks disclosed the existence of VOCs in its Decaf Coffee Products, the market value of those products would have been materially lower. Plaintiffs and Class members would not have purchased Starbucks Decaf Coffee Products or would have paid less for them. Plaintiffs therefore suffered overpayment and loss of the benefit of the bargain with respect to Starbucks Decaf Coffee Products as well.

85.    Starbucks' price premium is reflected in the marketplace. Comparable coffee products sold without unqualified ethical-sourcing or purity claims generally sell at lower prices, and Starbucks' Deceptive Claims were intended to—and did—differentiate Starbucks Coffee Products at the point of sale and justify higher prices.

86.    Plaintiffs will establish the existence and amount of the price premium and resulting overpayment on a class-wide basis through common evidence, including transaction and pricing data, benchmark comparisons to comparable coffee products lacking the challenged claims, and econometric and consumer-research methodologies—such as hedonic regression and willingness-to-pay or conjoint analysis—that isolate the portion of the purchase price attributable to Starbucks' Deceptive Claims and omissions.

## V.    TOLLING ALLEGATIONS

### A.    Discovery Rule Tolling

87.    Class members had no way of knowing about Starbucks' deception with respect to the human rights violations and environmental degradation of Starbucks' supply chain. To be sure, Starbucks continues to this day to make the same claims that is "Committed to 100% Ethical Sourcing" on the front labels of its Starbucks Coffee Products. Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Classes could not have discovered through the exercise of reasonable diligence that Starbucks was concealing the conduct complained

CLASS ACTION COMPLAINT - 29
Case No.: _____

1  of herein and was misrepresenting the Company's true position with respect to the human rights

2  violations and environmental degradation of Starbucks' supply chain.

3       88.    Plaintiffs and the other Class members did not discover and did not know of facts

4  that would have caused a reasonable person to suspect that Starbucks was hiding from consumers

5  material information about the human rights and environmental harm caused by its supply chains

6  for Coffee Products; nor would a reasonable and diligent investigation have disclosed this

7  information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in

8  any event would such an investigation on the part of Plaintiffs and other Class members have

9  disclosed that Starbucks valued profits over truthful marketing and compliance with law.

10       89.    Likewise, Plaintiffs and the other Class members did not discovery and did not

11  know of facts that would have caused a reasonable person to suspect that Starbucks was hiding

12  from consumers material information about the existence of VOCs in its coffee beans at time of

13  purchase.

14       90.    For these reasons, all applicable statutes of limitation have been tolled by operation

15  of the discovery rule with respect to claims alleged herein.

16  **B.**    **Fraudulent Concealment Tolling**

17       91.    All applicable statutes of limitation have also been tolled by Starbucks' knowing

18  and active fraudulent concealment, omissions, and suppressions and denial of the facts alleged

19  herein throughout the period relevant to this action.

20       92.    Instead of disclosing the systemic nature of the human rights violations and

21  environmental degradation in the Coffee Products supply chain, Starbucks chose instead to tout its

22  "Committed to 100% Ethical Sourcing" claims.

23  **C.**    **Estoppel**

24       93.    After consistently touting its ethical bona fides via its "Committed to 100% Ethical

25  Sourcing" claim on the front of Starbucks Coffee Products, Starbucks was under a continuous duty

26  to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the

27  its Coffee Products supply chain.

28

CLASS ACTION COMPLAINT - 30
Case No.: _____

011357-11/3434477 V1

94.     Starbucks knowingly, affirmatively, and actively concealed, omitted, or suppressed, or recklessly disregarded the true character, quality, and nature of the harvesting and replanting efforts within the Coffee Products supply chain.

95.     Based on the foregoing, Starbucks is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ALLEGATIONS

96.     Plaintiffs bring this action on behalf of themselves and all those similarly situated, as a class action pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following classes. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

**Washington State Starbucks Coffee Products Class**
All persons who on or after January 1, 2016, purchased a Starbucks Coffee Product in the state of Washington;

**Washington State Starbucks Decaf Coffee Products Class**
All persons who on or after January 1, 2016, purchased a Starbucks Decaf Coffee Product in the state of Washington;

**New York State Starbucks Coffee Products Class**
All persons who on or after January 1, 2016, purchased a Starbucks Coffee Product in the state of New York.

**New York State Starbucks Decaf Coffee Products Class**
All persons who on or after January 1, 2016, purchased a Starbucks Decaf Coffee Product in the state of New York.

97.     Excluded from the Classes are Starbucks and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

98.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

99.     This action has been brought and may be properly maintained on behalf of themselves and the Classes proposed herein under Federal Rule of Civil Procedure 23.

CLASS ACTION COMPLAINT - 31
Case No.: _____

011357-11/3434477 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

100.  <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, email, text messages, social media, Internet postings, and/or published notice.

101.  <u>Commonality and Predominance.</u> Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

  a) Whether Starbucks engaged in the conduct alleged herein;

  b) Whether Starbucks designed, advertised, marketed, distributed, sold, or otherwise placed Starbucks Coffee Products into the stream of commerce in the United States;

  c) Whether Starbucks made Deceptive Claims and concealed Common Omissions regarding Starbucks Coffee Products;

  e) Whether Starbucks knew about the human rights violations taking place in its supply chain for Starbucks Coffee Products and, if so, how long Starbucks has known of the issue;

  f) Whether Starbucks knew about the existence of VOCs in Starbucks Decaf Coffee Products, and if so, how long Starbucks has known of the issue;

  g) Whether Starbucks' conduct violates consumer protection statutes, the common law of fraudulent concealment, and other laws as asserted herein;

  h) Whether Plaintiffs and the other Class members overpaid for their Starbucks Coffee Products as a result of the fraud alleged herein;

  k) Whether Plaintiffs and the other Class members are entitled to equitable and/or injunctive relief; and

  j) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

CLASS ACTION COMPLAINT - 32
Case No.: _____

011357-11/3434477 V1


1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

102.    Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Starbucks' wrongful conduct as described above.

103.    Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes each respectively seeks to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

104.    Declaratory and Injunctive Relief. Federal Rule of Civil Procedure 23(b)(2): By representing that Decaf Coffee Products are environmentally friendly via its Deceptive Claims while also concealing the Common Omissions reflecting the significant Forest Degradation that the sourcing of wood pulp for Decaf Coffee Products generates, Starbucks has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, with respect to the Classes as a whole.

105.    Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Starbucks, so it would be impracticable for Class members to individually seek redress for Starbucks' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

# VII.   CLAIMS FOR RELIEF

## COUNT I

### VIOLATION OF WASHINGTON'S CONSUMER PROTECTION ACT, WASH. REV. CODE §§ 19.86, *ET. SEQ*;

106.    Plaintiff Williams repeats and realleges all allegations contained in the foregoing paragraphs.

107.    Plaintiff Williams brings this Count on behalf of herself and the Washington State Class of Starbucks Coffee Product purchasers and the Washington State Class of Starbucks Decaf Coffee Product purchasers.

108.    The Washington State Consumer Protection Act, RCW 19.86.020 (the "Washington CPA") broadly prohibits any "unfair or deceptive acts or practices" in the conduct of any trade or commerce as those terms are described by the Washington CPA and relevant case law.

109.    Starbucks is a "person" as described in RCW 19.86.010(1).

110.    Starbucks engages in "trade" or commerce" as described in RCW 19.86.010 by marketing, advertising, labeling, distributing, and selling Starbucks Coffee Products and Starbucks Decaf Coffee Products to consumers in Washington State. Starbucks engaged in unfair and deceptive acts and practices by uniformly representing, at the point of sale, that its coffee products are "Committed to 100% Ethical Coffee Sourcing," supported by references to C.A.F.E. Practices, "zero-tolerance" labor standards, and Conservation International, while simultaneously omitting material facts regarding (a) the recurring and systemic human-rights and labor-law violations occurring on C.A.F.E.-certified farms, and (b) the presence of volatile organic compounds in Starbucks Decaf Coffee Products.

111.    These deceptive acts and omissions were material to reasonable consumers, were likely to mislead consumers acting reasonably under the circumstances, and were not cured by any disclaimer or qualifying disclosure at the point of sale. Starbucks' conduct therefore constituted a deceptive act or practice within the meaning of RCW 19.86.020.

112.    Starbucks' deceptive conduct occurred in the course of trade or commerce and affected the public interest because Starbucks' challenged representations were uniform, consumer-

CLASS ACTION COMPLAINT - 34
Case No.: _____

1   facing, and disseminated broadly across Washington State through product packaging, in-store

2   sales, and third-party retail channels, and had the capacity to deceive and injure large numbers of

3   consumers.

4        113.   Starbucks' Deceptive Claims and related omissions were a producing cause of

5   Plaintiff's injuries. By uniformly communicating unqualified ethical-sourcing and product-purity

6   representations at the point of sale while omitting the material facts alleged above, Starbucks

7   induced Plaintiff and other Washington consumers to purchase Starbucks Coffee Products and

8   Starbucks Decaf Coffee Products and to pay prices that incorporated a premium attributable to

9   those deceptive representations.

10       114.   Plaintiff and the Washington Classes suffered injury to property within the meaning

11   of RCW 19.86.090 because they paid more than the true market value of the Products at the time of

12   purchase and received Products worth less than represented. This overpayment and diminution in

13   value constitute ascertainable economic loss and are measurable on a class-wide basis through

14   common proof, including benchmark comparisons, transaction and pricing data, and econometric

15   and consumer-research methodologies that isolate the portion of price attributable to Starbucks'

16   Deceptive Claims and omissions.

17       115.   Starbucks' violations are actionable under the CPA because Plaintiffs' injuries were

18   directly and proximately caused by Starbucks' unfair and deceptive acts and omissions, and

19   because Starbucks possessed exclusive or superior knowledge of the omitted facts regarding its

20   supply-chain practices and decaffeination processes, which were not reasonably discoverable by

21   consumers at the time of purchase.

22       116.   Starbucks is liable to Plaintiff for damages in amounts to be proven at trial,

23   including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may

24   deem appropriate under Wash. Rev. Code Ann. § 19.86.090.

25                                **COUNT II**

26        **FRAUDULENT CONCEALMENT UNDER WASHINGTON LAW**

27       117.   Plaintiff Williams repeats and realleges all allegations contained in the foregoing

28   paragraphs.

CLASS ACTION COMPLAINT - 35
Case No.: _____


011357-11/3434477 V1

1    118.    Plaintiff Williams brings this Count on behalf of herself and the Washington State

2    Class of Starbucks Coffee Products purchasers and the Washington State Class of Starbucks Decaf

3    Coffee Products purchasers.

4    119.    Starbucks voluntarily represented via the Deceptive Claims that its Starbucks Coffee

5    Products were environmentally sustainable and was therefore required to make a full and fair

6    disclosure under Washington law. Starbucks therefore had a duty to disclose the Common

7    Omissions in order to make the Deceptive Claims not misleading. Starbucks also knew that these

8    representations were false when made.

9    120.    The knowing and active concealment of the material facts render the Products'

10    packaging deceptive, misleading, and unfair because without full disclosure, Plaintiff and the

11    Washington Classes believed the Starbucks Coffee Products to be environmentally sustainable and

12    to have environmental benefits.

13    121.    Starbucks' omissions, concealment, misrepresentations, and other deceptive conduct

14    were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the

15    Washington Classes with respect to the environmental and sustainability claims.

16    122.    Starbucks intended that Plaintiff and the Washington Classes rely on its omissions,

17    concealment, misrepresentations, and other deceptive conduct as alleged herein regarding the

18    environmental and sustainability claims when purchasing the Starbucks Coffee Products.

19    123.    Starbucks' omissions, concealment, and/or misrepresentations alleged herein did

20    cause Plaintiff and the other Washington Class members to make their Starbucks Coffee Product

21    purchases. Plaintiffs were unaware of these material facts, and had Starbucks communicated these

22    material facts to consumers, Plaintiff and the other Washington Class members would not have

23    purchased Starbucks Coffee Products or would not have purchased Starbucks Coffee Products at

24    the prices they paid. Accordingly, Plaintiff and the other Washington Class members have suffered

25    injury in fact, including lost money or property, as a result of Starbucks' misrepresentations and

26    omissions.

27

28



124.     Accordingly, Starbucks is liable to Plaintiff and the other Washington Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

125.     Starbucks' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other Washington Class members' rights and the representations that Starbucks made to them, in order to enrich Starbucks. Starbucks' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349

126.     Plaintiff Strauss repeats and realleges all allegations contained in the foregoing paragraphs.

127.     Plaintiff Strauss brings this Count on behalf of himself and the New York State Class of Starbucks Coffee Products purchasers and New York State Class of Starbucks Decaf Coffee Products purchasers.

128.     The acts of Defendant, as described above, constitute unlawful, deceptive, and fraudulent business acts and practices.

129.     Defendant has marketed Starbuck Coffee Products with the Human Rights Representations and Sustainability Representations when, in fact, Starbucks regularly sources coffee from farms engaging in human rights violations and destructive environmental behavior, despite those farms being part of Starbucks' C.A.F.E. Practices program.

130.     Defendant has violated, and continues to violate, Section 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate cause of Defendant's violation of Section 349, Plaintiff and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

131.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass members to purchase and to pay the

CLASS ACTION COMPLAINT - 37
Case No.: _____

011357-11/3434477 V1


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

1   requested price for the Products when they otherwise would not have or would not have purchased
2   as much.

3          132.    Defendant knows what representations it made on the packaging, on its website, and
4   in public reports. Defendant also knows how the coffee is actually being sourced and produced.
5   Defendant, thus, knows, or should know, that the Products are being falsely advertised.

6          133.    Defendant thus makes these misleading statements and representations willfully,
7   wantonly, and with reckless disregard for the truth.

8          134.    Plaintiff Strauss and the New York Subclass members have been injured by their
9   purchase of the Products, which were worth less than what they bargained and/or paid for, and
10  which they selected over other products that may have been truthfully marketed.

11         135.    Defendant's advertising and on-package representations induced Plaintiff Strauss
12  and the New York Subclass members to buy the Products, to buy more of the Products, and/or to
13  pay the price requested for those Products.

14         136.    As a direct and proximate cause of Defendant's violation of Section 349, Plaintiff
15  Strauss and other members of the New York Subclass paid for falsely advertised Products, and, as
16  such, have suffered damages in an amount to be determined at trial.

17         137.    Therefore, Defendant is liable to Plaintiff Strauss and the other members of the New
18  York Subclass for actual damages, for treble damages in the Court's discretion, or for fifty dollars
19  ($50) for each purchase of a Starbucks Coffee Product (whichever is greatest); attorneys' fees; and
20  the costs of this suit.

21         138.    Defendant continues to engage in the deceptive conduct, and, upon information and
22  belief, will continue to do so. Members of the New York Subclass that Plaintiff Strauss seeks to
23  represent are purchasing, and will continue to purchase, the misrepresented Products.

24         139.    The unfair and deceptive acts and practices of Defendant, as described above,
25  present an ongoing threat to Plaintiff and the other members of the New York Subclass.

26

27

28



1

2

**COUNT IV**

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 350**

3    140.    Plaintiff Strauss repeats and realleges all allegations contained in the foregoing

4    paragraphs.

5    141.    Plaintiff Straus brings this Claim on behalf of himself and the New York State Class

6    of Starbucks Coffee Products purchasers and the New York State Class of Starbucks Decaf Coffee

7    Products purchasers.

8    142.    The acts of Defendant, as described above, constitute unlawful, deceptive, and

9    fraudulent business acts and practices.

10    143.    New York General Business Law Section 350 provides: "False advertising in the

11    conduct of any business, trade or commerce or in the furnishing of any service in this state is

12    hereby declared unlawful."

13    144.    GBL Section 350-A defines "false advertising," in relevant part, as "advertising,

14    including labeling, of a commodity … if such advertising is misleading in a material respect."

15    145.    Plaintiff Strauss and the members of the New York Subclass are consumers who

16    purchased Starbucks Coffee Products in the State of New York.

17    146.    Defendant is engaged in the conduct of business, trade, or commerce within the

18    meaning of GBL Section 350.

19    147.    Defendant's representations made by statement, word, design, device, sound, or any

20    combination thereof, and also the extent to which Defendant's advertising fails to reveal material

21    facts with respect to the Products, as described above, constitute false advertising in violation of

22    the New York General Business Law.

23    148.    Defendant's false advertising was knowing and intentional.

24    149.    Defendant's actions led to direct, foreseeable, and proximate injury to Plaintiff and

25    members of the New York Subclass.

26    150.    As a consequence of Defendant's deceptive marketing, Plaintiff and the other

27    members of the New York Subclass suffered an ascertainable loss, insofar as they would not have

28    purchased the Products had they known the truth, would not have paid the price requested, and/or

CLASS ACTION COMPLAINT - 39

Case No.: _____

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

1  would have purchased fewer of the Products; moreover, as a result of Defendant's conduct,

2  Plaintiff Strauss and the other members of the New York Subclass received coffee of less value

3  than what they paid for.

4       151.    By reason of the foregoing, Defendant is liable to Plaintiff and the other members of

5  the New York Subclass for actual damages, for treble damages in the Court's discretion, or for fifty

6  dollars ($50) for each purchase of a Starbucks Coffee Product (whichever is greatest); attorneys'

7  fees; and the costs of this suit.

8       152.    Defendant continues engaging in the challenged deceptive conduct, and, upon

9  information and belief, will continue to do so. Members of the New York Subclass that Plaintiff

10  Strauss seeks to represent are purchasing, and will continue to purchase, the misrepresented

11  Products.

12  **COUNT V**

13  **FRAUDULENT CONCEALMENT UNDER NEW YORK LAW**

14       153.    Plaintiff Strauss repeats and realleges all allegations contained in the foregoing

15  paragraphs.

16       154.    Plaintiff Straus brings this Claim on behalf of himself and the New York Subclass.

17       155.    Starbucks intentionally concealed and suppressed material facts regarding its Coffee

18  Products. These material facts include: (1) systematic human rights and labor law violations at

19  coffee plantations in Starbucks C.A.F.E. supply chain and (2) the existence of VOCs in Starbucks

20  Decaf Coffee Products.

21       156.    Despite being regularly contacted by nongovernmental organizations and

22  newspapers such as Reporter Brazil, China Coffee Watch, and others, Starbucks has yet to

23  systematically change its sourcing practices to eliminate human rights and labor law violations.

24       157.    Starbucks voluntarily represented that it is "Committed to 100% Ethical Sourcing"

25  claim on its front labels and was therefore required to make a full and fair disclosure under New

26  York law. Starbucks also knew that these representations were false when made and therefore

27  Starbucks had a duty to disclose material facts to make its Deceptive Claim not misleading.

28

CLASS ACTION COMPLAINT - 40
Case No.: _____

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

011357-11/3434477 V1

158.    The knowing and active concealment of the material facts render the Coffee Products' packaging deceptive, misleading, and unfair because without full disclosure, Plaintiff and the New York Classes believed the Starbucks Coffee Products to be sourced in an ethical manner that respect human rights, local labor laws, and the environment.

159.    Starbucks' omissions, concealment, misrepresentations, and other deceptive conduct were likely to deceive or cause misunderstanding and did in fact deceive Plaintiff and the New York Classes with respect to the human rights and environmental claims.

160.    Starbucks intended that Plaintiffs and the New York Classes rely on its omissions, concealment, misrepresentations, and other deceptive conduct as alleged herein when purchasing Starbucks Coffee Products.

161.    Starbucks' omissions, concealment, and/or misrepresentations alleged herein did cause Plaintiff and the other New York Class members to make their coffee bean purchases. Plaintiff was unaware of these undisclosed material facts as described herein, and had Starbucks communicated these material facts to consumers, Plaintiff and the other New York Class members would not have purchased Starbucks Coffee Products or would not have purchased Starbucks Coffee Products at the prices they paid. Accordingly, Plaintiff and the other New York Class members have suffered injury in fact, including lost money or property, as a result of Starbucks' misrepresentations and omissions.

162.    Accordingly, Starbucks is liable to Plaintiff and the other New York Class members for damages in an amount to be proven at trial, including but not limited to, benefit-of-the-bargain damages, restitution and/or diminution of value.

163.    Starbucks' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and other New York Class members' rights and the representations that Starbucks made to them, in order to enrich Starbucks. Starbucks' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the proposed Class, respectfully request that the Court enter judgment in their favor and against Starbucks, as follows:

A.      Certification of the proposed Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B.      An order temporarily and permanently enjoining Starbucks from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

C.      Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

D.      An order requiring Starbucks to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all claims so triable.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

DATED: January 13, 2026

Respectfully submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: /s/ *Steve W. Berman*
Steve W. Berman (SBN 12536)
By: /s/ *Catherine Y.N. Gannon*
Catherine Y.N. Gannon (SBN 47664)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com
catherineg@hbsslaw.com

Ani Zotti (*pro hac vice* forthcoming)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3051
Facsimile:  (510) 725-3001
Email: ani.zotti@hbsslaw.com

Kim E. Richman (*pro hac vice* forthcoming)
**RICHMAN LAW & POLICY**
1 Bridge Street, Suite 83
Irvington, New York 10533
Telephone: (914) 693-2018
Email: krichman@richmanlawpolicy.com

*Attorneys for Plaintiffs and the Putative Class*

CLASS ACTION COMPLAINT - 43
Case No.: _____

011357-11/3434477 V1